UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| CHARLES V. UPSHUR-BEY, ) | |
| ) | |
| Petitioner, ) | |
| ) | Civil No. 15-49-ART |
| v. ) | |
| ) | |
| MICHAEL SEPANEK, *Warden*, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Respondent. ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Charles Upshur-Bey is an inmate confined at FCI Cumberland, a federal prison in Maryland. He petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, arguing that the United States Parole Commission has violated the Due Process, Equal Protection, and Ex Post Facto Clauses of the United States Constitution. R. 1. He also brings two more motions, which he styles as an amended petition, R. 11, and a supplemental memorandum, R. 12, but which in reality contain additional claims for relief. For the following reasons, none of those claims have merit. The petition is therefore denied.

**I.   Background**

Upshur-Bey's current sentence is the product of three difference sentences. In 1990, the Superior Court of the District of Columbia sentenced him to prison for armed robbery and related charges. R. 6-2 at 1. The same day and in the same court, but in a different case, he was sentenced for assault with a dangerous weapon and robbery. *Id*. at 2–3. Four years later, he was sentenced in the same court for armed murder, which he apparently committed

during a two-week period in which he had absconded from prison. *Id*. at 3. For these crimes he is serving an aggregate sentence of thirty-two years (and change) to life. *Id*. at 4.

In September 2014, Upshur-Bey was up for an initial parole hearing. The U.S. Parole Commission has the authority to grant or to deny parole to those in prison for violating the District of Columbia's laws. D.C. Code Ann. § 24-131. Applying the D.C. Parole Board's 1987 Guidelines—a point system that helps determine whether an inmate deserves to be released—a parole examiner scored Upshur-Bey at a 2. R. 6-4 at 3. Normally, such a score justifies granting parole. 28 D.C. Mun. Regs. § 204.17 (1987). But the examiner found Upshur-Bey more violent than his score indicated. That finding had two main bases: First, Upshur-Bey's "ongoing and repetitive criminal behavior." R. 6-4 at 4. Most significant for the examiner was that over a two-week period—while Upshur-Bey was "in absconder status from a secure placement"—he had shot three people, "killing one person [a taxi driver] who simply told [him] no when [he] asked [the man] for a ride." *Id*. Second, Upshur-Bey's lack of remorse. Although "he did state [to the examiner that] he regrets his actions," he appeared to regret them "because his actions cause[d] him to become incarcerated, not because he took a life and assaulted two others." *Id*. As evidence, the examiner noted that Upshur-Bey had "taken no victim impact programming or cognitive behavioral programming to address [his] criminal behavior" while in prison, and only a small amount of vocational programming. *Id*. Thus, the examiner recommended that the Parole Commission depart from the guidelines, deny parole, and see Upshur-Bey for a reconsideration hearing in another sixty months, *i.e.*, September 2019. *Id*.

2

The Commission adopted the recommendation. R. 6-5. Addressing Upshur-Bey directly, the Commission explained its decision as follows:

> [A] departure from the guidelines at this [point] is found warranted because the [Commission] finds there is *a reasonable probability that you would not obey the law if released and your release would endanger the public safety*. You are a more serious risk than indicated by your grid score because you participated in ongoing and repetitive criminal behavior. . . . The guidelines for the time to [conduct a] rehearing indicate that your next hearing should be scheduled within 12 months. A departure from these guidelines is found warranted for the same reason provided above for denying parole.

*Id.* (emphasis added). The Commission therefore denied parole and continued Upshur-Bey's rehearing for sixty months.

Upshur-Bey then filed this habeas petition, R. 1, challenging several aspects of the Commission's decision, and after that his amended petition and supplemental memorandum, R. 12; R. 13, bringing still more claims.

## II. Habeas Petition

In his original habeas petition, Upshur-Bey alleges that the Commission violated various constitutional provisions in denying him parole. But as an initial matter, he seems to argue that the Commission applied incorrect guidelines: not the 1987 D.C. guidelines that the law required it to apply, but federal parole guidelines passed more recently. R. 1-1 at 9–12 (arguing that the Commission retroactively applied newer guidelines). So before addressing Upshur-Bey's claims about the Commission's specific decisions, the Court must determine whether the Commission even applied the correct general framework. The Court will then determine whether the Commission applied that framework correctly, something Upshur-Bey also challenges. And finally the Court will address his constitutional claims.

3

### A. The Applicable Guidelines

This determination requires some context. As noted, the U.S. Parole Commission has paroling authority over those in prison for breaking the laws of the District of Columbia. This was not always so. The Commission assumed this authority from the D.C. Parole Board in 1998. D.C. Code § 24-131(a)(1). At the same time, the Commission gained the "exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons." *Id.* And it quickly used that authority to set forth parole guidelines for D.C. Code offenders. 28 C.F.R. § 2.80.

Years later, the D.C. District Court held that retroactively applying the Commission's guidelines could violate the Ex Post Facto Clause, specifically if those guidelines "significantly increase the risk that [inmates] would serve longer terms of incarceration" than they would have under the guidelines that the D.C. Parole Board had been using before the Commission came along. *Sellmon v. Reilly*, 551 F. Supp. 2d 66, 68 (D.D.C. 2008). Now the Commission applies the D.C. Parole Board's 1987 Guidelines if an inmate committed his offense "after March 3, 1985 and before August 5, 1998." 28 C.F.R. § 2.80(o)(2)(i).

Upshur-Bey committed the relevant offenses around the early to mid-1990s. So did the Commission apply the 1987 Guidelines as it was supposed to? The record makes clear that it did. *See* R. 6-3 at 8 (DC Board of Parole Guideline Prehearing Assessment) (referring to point totals "under the 1987 Board guidelines for D.C. Code offenders"); R. 6-4 at 3 (Post Hearing Assessment) ("Your current Grid Score is 2, as scored under the 1987 D.C. Board of Parole Guidelines."); R. 6-5 (Commission Notice of Action) ("You have a total point score of 2 under the 1987 Board guidelines for D.C. Code offenders."). Besides, the more recent

federal parole guidelines added various factors for the Commission to consider, factors that it does not consider when applying the 1987 Guidelines. *See Sellmon*, 551 F. Supp. 2d at 69–73 (comparing the two). And it does not appear to have considered any such factors here. Thus, the record shows that the Commission applied the right set of guidelines.

### B. The Commission's Application of those Guidelines

But Upshur-Bey argues that the Commission nevertheless misapplied those guidelines in two ways: first by departing from the guidelines, which had suggested that Upshur-Bey deserved parole. R. 1-1 at 10–14. Initially, he seems to contest that the Commission even had authority to do so under the 1987 Guidelines. *See id*. at 13 (arguing that the decision is "in conflict with the Parole Statutes"). Yet those guidelines expressly gave the D.C. Parole Board—and now give the Commission—discretion to grant or to deny parole, regardless of any point total. D.C. Code § 24-404(a) ("[T]he Commission *may* authorize [an inmate's] release on parole[.]" (emphasis added)). Specifically when facing "unusual circumstances," the Commission may deny parole to an otherwise eligible candidate as long as it specifies its reasons for doing so in writing. 28 D.C. Mun. Regs. § 204.22.

Courts do not review the merits of the Commission's decisions; they look only for an abuse of discretion. *See, e.g.*, *Stevens v. Quick*, 678 A.2d 28, 31 (D.C. 1996). As long as there is "a rational basis in the record for the Commission's conclusions embodied in its statement of reasons," the Court must affirm. *Hackett v. U.S. Parole Comm'n*, 851 F.2d 127, 130 (6th Cir. 1987). "Unusual circumstances" can include the unusual cruelty of an inmate's offense and the reasonable probability that his release will endanger the public. *Sellmon*, 551 F. Supp. 2d at 95; *White v. Hyman*, 647 A.2d 1175, 1179 (D.C. 1994). Under that definition,

5

Upshur-Bey's history of violence—which included shooting a cab driver after absconding from prison—constituted unusual circumstances. The Commission had a rational basis for finding that Upshur-Bey posed a danger to public safety and thus for denying parole despite his low point total. *Accord Smith v. Sepanek*, No. 14-CV-55-ART, 2015 WL 5841937, at *3 (E.D. Ky. Oct. 5, 2015) (upholding the denial of parole where the Commission found that an inmate posed a danger to the public because of his repeated violent conduct).

The same goes for Upshur-Bey's second argument: that the Commission could not delay his rehearing for more than twelve months. R. 1-1 at 5. Again, the 1987 Guidelines gave the D.C. Parole Board—and now give the Commission—discretion to "order a parole reconsideration date it determines to be appropriate." 28 D.C. Mun. Regs. § 104.11; *see also White*, 647 A.2d at 1179 (allowing a five-year delay because of the danger the inmate posed to public safety). Here, given the danger it saw in releasing Upshur-Bey, the Commission used its discretion to set a rehearing date five years in the future. R. 6-5. As discussed, that decision had a rational basis.

**C. Due Process and Equal Protection**

Upshur-Bey next argues that the Commission violated the Constitution. First up, the Due Process Clause. R. 1-1 at 14–19. To prove a due-process violation, Upshur-Bey must show that he had a liberty interest that the Constitution actually protects—and thus that the Commission could not lawfully have deprived him of without the rigmarole of due process. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). The Due Process Clause itself does not give inmates a liberty interest in receiving parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Nor do the District of Columbia's parole regulations create

6

one. *See Blair-Bey v. Quick*, 151 F.3d 1036, 1047 (D.C. Cir. 1998); *McRae v. Hyman*, 667 A.2d 1356, 1357 (D.C. 1995). Thus, Upshur-Bey has no basis for challenging the denial of his parole—or the timing of his rehearing—on due-process grounds.

Plus, even if the District's regulations *did* create a liberty interest in parole, the Commission nevertheless gave Upshur-Bey all the process it was required to give—namely, a hearing and a statement of its reasons for denying parole. *Greenholtz*, 442 U.S. at 15–16; *White*, 647 A.2d at 1179–81. Though Upshur-Bey calls that process "meaningless"—as well as "unsavory," "a nightmare," and an "unseem[ly] culture of death," among other things, R. 1-1 at 14–19—he provides no evidence to support these allegations. And such conclusory allegations, without evidence, prove nothing; nor do they warrant habeas relief. *See, e.g.*, *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998).

Widening the lens, Upshur-Bey further argues that the Commission's very existence violates his due-process rights—in two ways. R. 1-1 at 19. First, he asserts that Congress abolished the Commission with the Sentencing Reform Act of 1984. Based on that assertion, he charges the Commission with "avoid[ing] [its] congressionally determined resting place among the tombstones of the graveyard for deceased" government bodies. R. 1-1 at 21. The Act did get rid of federal parole for those who have committed federal crimes since 1987, but it did not abolish the Parole Commission entirely. Sentencing Reform Act of 1984, Pub. L. 98–473, § 235, 98 Stat. 1987 (codified as amended at 18 U.S.C. § 3551). The Commission maintains jurisdiction over those who committed crimes before 1987, D.C. Code offenders, and others. *See* U.S. Dep't of Justice, *Organization, Mission and Functions Manual: United*

*States Parole Commission* (Sept. 9, 2014)[1]; *see also Dolfi v. Pontesso*, 156 F.3d 696, 697 (6th Cir. 1998) ("The old Parole Commission remains in existence to control the release of prisoners sentenced prior to the effectiveness of the Sentencing Guidelines [in the Sentencing Reform Act]."). And ever since abolishing most—but not all—of its duties, Congress has kept on adding years to the Commission's life so that it can carry out the duties it retains. *See* United States Parole Commission Extension Act of 2013, Pub. L. No. 113–47, 127 Stat. 572 (codified at 18 U.S.C. § 3551) (extending the Commission's life until 2018).

The Commission thus is not the zombie that Upshur-Bey describes. Rather, Congress has kept the Commission alive. And it has not "trampl[ed]" on any liberty interests by doing so, as Upshur-Bey suggests. R. 1-1 at 21. Those who break the law do not have an interest in seeing Congress abolish that law or the laws that dictate their punishments. At least, not an interest that the Constitution protects.

Second, Upshur-Bey points out (correctly) that D.C. offenders face a different kind of parole regime than most other prisoners. R. 1-1 at 19–20. He argues that this difference violates both due process and equal protection. *Id.* at 19. As for due process, he alleges that "the D.C. Code offender is hopelessly condemned to languish in federal prison indefinitely," apparently as he awaits parole. *Id.* at 21. Yet as Upshur-Bey puts it, even "criminal justice hard liners" would agree that no one sits in prison indefinitely, unless he is sitting there under a life sentence. *Id.* at 20. Otherwise, he can leave when his sentence ends. That is just as true for the D.C. offender as for any other. Also just as true: No offender enjoys an inherent liberty interest under the Due Process Clause in leaving on parole *before* that sentence ends.

---

[1] *Available at* https://www.justice.gov/jmd/organization-mission-and-functions-manual-united-states-parole-commission (last visited Feb. 21, 2017).

As for equal protection, Upshur-Bey argues that Congress has created "an egregious double standard" by "terminat[ing] the federal parole system" yet allowing the Commission to continue to oversee the District of Columbia's parole system. R. 1-1 at 22. But the Equal Protection Clause "does not require that all persons everywhere be treated alike." *Noble v. U.S. Parole Comm'n*, 194 F.3d 152, 154 (D.C. Cir. 1999). Rather, it stops the government from treating "*similarly situated* individuals differently without a rational basis" for doing so. *Id.*; *see Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). Upshur-Bey has most likely been punished differently than those who violate a different state's laws. But he has shown no evidence that he has been punished differently than those similarly situated, *i.e.*, anyone who has broken D.C. laws and thus found himself under the D.C. parole system, which the Commission administers for the District.

### D.  The Ex Post Facto Clause

Upshur-Bey also argues that the Commission violated the Ex Post Facto Clause by departing from the 1987 Guidelines. R. 1-1 at 7–8. The Commission might indeed have violated that clause if it had retroactively applied a law that increased the punishment for his offenses. *See Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995). But as explained, the Commission applied the 1987 Guidelines, which were in place when he committed those offenses. And the Commission did not increase Upshur-Bey's punishment by departing from those guidelines—he did not have a right to parole, even with his low score. The guidelines speak in discretionary language: The Commission shall grant parole unless, in its discretion, it "believes there is some other reason for not granting" it. *Ellis v. Dist. of Columbia*, 84 F.3d 1413, 1419 (D.C. Cir. 1996); *see also Greenholtz*, 442 U.S. at 9–10 ("[T]here is no set

of facts which mandate a [parole] decision favorable to the individual."). The Commission saw a basis for denying parole, that basis was rational, and the Commission had discretion to deny parole (and to delay a parole rehearing) on that basis under the law that existed when Upshur-Bey committed his crimes. The Commission simply used discretion it already had. That does not violate the Ex Post Facto Clause.

Upshur-Bey responds that the Commission improperly considered the "nature of his offenses," a factor which does not appear in the 1987 Guidelines. R. 1-1 at 10. He appears to be referring to the "offense accountability" factor, which does appear in the more recent federal parole guidelines. This factor allows the Commission to consider denying parole not just because of an inmate's risk of committing future crimes but also because of the gravity of his past crimes. And most importantly for present purposes, the *Sellmon* court prohibited the Commission from applying this factor retroactively to an inmate. 551 F. Supp. 2d at 99. But nothing in the record suggests that the Commission relied on that factor here. Instead, the Commission denied parole because Upshur-Bey posed a risk of future crime, as it had the discretion to do under the 1987 Guidelines. D.C. Code § 24-404(a); *Sellmon*, 551 F. Supp. 2d at 95; *White*, 647 A.2d at 1179 (D.C. 1994).

In sum, when it denied parole and continued Upshur-Bey's reconsideration hearing for sixty months, the Commission applied the correct guidelines, applied those guidelines correctly, and did not violate the Due Process, Equal Protection, or Ex Post Facto Clauses. Upshur-Bey's original petition therefore contains no viable claim for habeas relief.

### III.     Amended Petition and Supplemental Memorandum

After Warden Sepanek had responded to Upshur-Bey's original petition, the Court gave Upshur-Bey leave to file a late reply. R. 10. Instead, he filed another habeas petition. R. 11. Although titled an "Amended petition," *id.* at 1, this petition does not actually amend anything in the original one. Rather, it asserts a new claim: that Upshur-Bey's conviction is "null and void" because one statute under which he was convicted was never listed in his indictment and because others have since been repealed. *Id.* at 2. Upshur-Bey then filed a "supplemental memorandum," which again did not relate to any claims in his earlier filings. R. 12. Rather, he asserted yet another claim: that his conviction is void under *Johnson v. United States*, 135 S. Ct. 2551 (2015), and *Welch v. United States*, 135 S. Ct. 1257 (2016). *Id.* at 1–2.

Warden Sepanek moves to sever these new claims into two separate actions pursuant to Federal Rule of Civil Procedure 21. R. 13. That is unnecessary. For one thing, these claims are waived. *See Sailing v. Budget Rent-A-Car Sys., Inc.*, 672 F.3d 442, 444 (6th Cir. 2012) ("Arguments raised only in reply, and not in the original pleadings, are not properly raised before the district court[.]" (quoting *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 275 (6th Cir. 2010))).

For another, they are meritless. In his amended petition, Upshur-Bey asserts two claims that he has already asserted in a previous habeas action before this Court. *Upshur v. Berkebile*, No. 7:11-cv-00072-ART (E.D. Ky. 2011). The first—that his indictment never listed the murder statute—the Court found unavailing because Upshur-Bey had nevertheless told the trial court way back when that he "understood the amount of time he was facing."

*Id.*, D.E. 21 at 5–6 (quoting *Upshur v. United States*, 742 A.2d 887, 894 (D.C. 1999)).  The second—that some statutes under which he was convicted have been repealed—Upshur-Bey himself has contradicted in a previous motion, where he noted that those statutes have merely been recodified.  *Id.*, D.E. 20 at 2 ("D.C. Code 22-3202 [is] now codified [at] 22-4502[.]"); *id.* at 3 ("D.C. Code 22-2403 [is] now codified [at] 22-2103[.]").

In his supplemental memorandum, Upshur-Bey asks the Court to vacate his sentence under *Johnson*, which struck down a clause in the Armed Career Criminal Act ("ACCA"), 135 S. Ct. at 2557–60, and *Welch*, which held that *Johnson* applies retroactively, 136 S. Ct. at 1264–65.  Generally, a prisoner must bring such a request in a motion under Section 2255, not a habeas petition under Section 2241.  *See* 28 U.S.C. § 2255(e).  Even if Upshur-Bey had filed the right type of motion, though, his *Johnson* claim still would not entitle him to relief.  He was convicted under D.C. criminal laws, not the ACCA; *Johnson* pertains to the ACCA, not D.C. criminal laws; *Johnson* therefore does not apply here.  Although Upshur-Bey asserts that relevant portions of D.C.'s laws are "identical" to the ACCA's unconstitutional clause, R. 12 at 1, he cites no opinion from the D.C. courts—or any others—striking those portions down under *Johnson*.  Nor is this Court inclined to do so, especially since this *Johnson* claim is not even properly before it.

Thus, the Court need not prolong the life of Upshur-Bey's new claims by severing them into separate actions.  Because those claims are waived and otherwise meritless, the Court can simply dismiss them here.

### IV. Conclusion

None of the claims that Upshur-Bey raises in his original petition, amended petition, or supplemental memorandum entitle him to relief under 28 U.S.C. § 2241. Accordingly, it is **ORDERED** as follows:

(1) Upshur-Bey's original and amended petitions, R. 1; R. 11, are **DENIED**.

(2) This matter is **DISMISSED** and **STRICKEN** from the Court's active docket.

(3) Warden Sepanek's motion to sever, R. 13, is **DENIED AS MOOT**.

(4) A judgment shall issue separately.

This the 22nd day of February, 2017.

Signed By:
*Amul R. Thapar* AT
United States District Judge